ANN R. DERMOTT, PLAINTIFF IN ERROR, *v.* ZEPHENIAH JONES.

Where there was a special contract to build a house by a certain day, which was not fulfilled, owing to various circumstances, and the contractor brought a suit setting forth the special contract and averring performance, it was erroneous in the court to instruct the jury to find for the plaintiff, as the work was not finished by the appointed day, though it was completed after the time with the knowledge and approbation of the defendant.

By the terms of the contract, the performance of the work was a condition precedent to the payment of the money sued for.

The general rule of law is, that whilst a special contract remains open, that is, unperformed, the party whose part of it has not been done cannot sue in indebitatus assumpsit, to recover a compensation for what he has done, until the whole shall be completed. But the exceptions from that rule are in cases in which something has been done under a special contract, but not in strict accordance with it; but if the other party derives any benefit from the labor done, the law implies a promise on his part to pay such a remuneration as the work is worth, and to recover it an action of indebitatus assumpsit is maintainable.

The case must be remanded to the Circuit Court, to be tried upon such counts as are in the original declaration, which charges the defendant in the sum of $5,000 for work and labor done, for materials furnished and used by the defendant in the erection and finishing certain stores and buildings in the city of Washington; and upon the money counts for a like sum paid by the plaintiff for the defendant; for a like sum had and received, and for a like sum paid, laid out, and expended, by the plaintiff, for the use of the defendant, at her request. And in such action the defendant may recoup the damages which she has sustained from the imperfect execution of the work.

THIS case was brought up by writ of error from the Circuit Court of the United States for the District of Columbia.

It was an action of debt brought by Jones against Ann R. Dermott for the sum of five thousand dollars. The declaration contained four counts, viz:

1. That the defendant, on the first day of July, 1852, was indebted to the plaintiff, in the sum of five thousand dollars, for work and labor done and materials furnished to the defendant by plaintiff, and used by her in and about the erection of certain buildings, and finishing and completing certain stores in said buildings, in the city of Washington.

2. For a like sum paid by plaintiff for defendant.

3. For a like sum had and received.

4. For a like sum paid, laid out, and expended by plaintiff, for defendant, and at her request.

The plaintiff below had also filed a bill on the equity side of the court, which was pending; whereupon the defendant moved for a rule upon him to elect between his said action of debt, pending on the common-law side of this court against this defendant, and his said bill pending on the equity side of this court against the said defendant, as to the sum of money, to wit: $14,000, with interest, for which a decree is prayed against said defendant by plaintiff in his said bill.

Whereupon the plaintiff says he elects to recover in this action only the $5,000 mentioned in his said bill in equity, to be paid by defendant on the completion of the said stores and warehouse in said bill mentioned, and claimed on the 1st October, 1851, with interest, and hereby disclaims all and every right or pretension in this cause to recover any portion of said $14,000.

Whereupon the court made the following order, to wit:

The plaintiff having made his election under the said order or rule made at March term, 1854, as aforesaid, to prosecute this action of debt for the recovery of the said sum of $5,000:

It is further ordered by the court, that the said bill in chancery be dismissed, and the same is dismissed accordingly, quoad the said $5,000.

The reporter will not carry the reader through the following process of pleading, the mention of which will be sufficient.

It has been already stated that the declaration contained four counts. The defendant pleaded specially to the declaration setting up the special agreement, &c. Whereupon the

plaintiff amended his narr., adding special counts upon the contract. The amended narr. was objected to. Objection overruled, and exception taken. The amended narr. contained the following counts:

1. On the contract alleging performance, and that $5,000 was due, stating the time mentioned in the contract, (1st October,) under a videlicet.

2. Treating the time (1st October) as material, averring that the plaintiff had performed his part, but that the defendant departed from the contract.

3 and 4. The common counts in debt for the extra work.

The pleas were—

To the first count, *nil debet,* non-performance generally, and non-performance specially, in not completing the stores and warehouse on or before the 1st of October.

To the second, third, and fourth, demurrers.

To the plea of non-performance, in not completing the work on the 1st of October, the plaintiff demurred, and judgment for the demurrer.

Upon the demurrers of the defendant to the second, third, and fourth counts, demurrers overruled, and judgments for the plaintiff.

Verdict for the plaintiff on the first count, and inquisitions, with nominal damages, on the second and third counts, and for the value of the extra work on the fourth count. Judgment accordingly.

From this account of the pleadings, the reader will readily perceive the points of law which came up to this court. But in order to make it more clear, the prayers to the court by the defendant (none being offered by the plaintiff) are inserted. There were five prayers, the only one of which was granted was the fourth. Numbers one and three were granted with a qualification; numbers two and five were refused.

*Fourth Prayer.* If the jury find, from the evidence aforesaid, that the plaintiff so negligently and unfaithfully executed the work specified in the contract and specifications aforesaid, that, from insufficient drainage, bad workmanship, departure from the written specifications or other acts or omissions of

the plaintiff, in so negligently and unfaithfully executing said work, the three stores and warehouse aforesaid were damaged and injured, as stated in the evidence, then the defendant is entitled to recoup or deduct from the amount claimed in this action all damages sustained by the defendant, and resulting from said injury.    Granted.

*Fifth Prayer.* That, under the issues joined on the first count of the amended declaration, the defendant is entitled to the verdict, unless the jury shall find, from the evidence, that the plaintiff did finish and deliver over to the defendant the three stores and warehouse described in said written contract, ready for use and occupation, on or before the 1st day of October, A. D. 1851.    Rejected.

*Second Prayer.* That, by the true intent and meaning of the written contract and specifications read in evidence, the said Zephaniah Jones undertook and obliged himself to finish the three stores and warehouse therein described, and deliver them over to the defendant, fitting for use and occupation, on or before the 1st day of October, 1851; and the said Jones also undertook and obliged himself to procure and supply all and singular the materials, implements, fixtures, matters and things requisite and proper for the execution of said ——, and for the complete finishing and fitting for use and occupation of said warehouse and stores.    And if the jury find that the said warehouse and stores, when delivered over by said Jones to the defendant, were not fitting for use and occupation, but the same were defective, unsafe, and untenantable, by reason of the cracking of parts of the walls and the settlement of portions of the store walls, or otherwise; and if the jury further find that it was possible for said Jones to have constructed said warehouse and stores, and to have delivered the same to the defendant fitting for use and occupation, by his furnishing additional labor, materials, matters and things, (not named in said written specifications,) in and about the fitting of the same for use and occupation, then the said Jones did not perform and discharge the obligation of his said contract, although the jury may believe that the said warehouse and three stores were erected and constructed in strict conformity

to the specifications made a part of said contract; and although the cracking of said walls and settlement of said foundations may have resulted from causes wholly unforeseen by either party at the time of executing said contract and constructing said foundations and walls; and although the said cracking and settlement may have been caused by the weight placed on said walls and foundations, or some part thereof, according to the requirements of such specifications, or of additional weight placed on the same or some part thereof by said Jones, at the request of said defendant, and which additional weight was not called for in said specifications; but the court further instructs the jury that the plaintiff is entitled to recover nominal damages at all events.    Refused.

DEFENDANT'S FIRST AND THIRD PRAYERS, WITH THE QUALIFICATION.

*First Prayer.* And thereupon the defendant prayed the court to instruct the jury, as follows:

If the three stores and warehouse in the contract mentioned were not executed and finished, fit for use and occupation, and so delivered to defendant, either on the said 1st day of October, 1851, in the said contract mentioned, nor at any other time, but were, at the time the same were delivered, wholly unfit and unsafe for use and occupation, with walls, or some of them, sunken out of plumb and cracked, and in danger of falling, so as to be utterly untenantable and unfit for use and occupation, then the plaintiff was not entitled to demand and recover in this action the said sum of five thousand dollars, as the stipulated instalment which the said contract purports to make payable on the said 1st October, on the terms and conditions therein mentioned, but the plaintiff is entitled to recover the value of his said work, after deducting the cost and expense incurred by the defendant in repairing said stores and warehouse, and rendering them fit for use and occupation, but the plaintiff is entitled to nominal damages at all events.

*Third Prayer.* If the defendant did not, at any time or times whatever, execute, finish, ready for use and occupation, and in that state and condition deliver over to the defendant the

said stores and warehouse mentioned, but delivered the same over to the defendant in a state wholly unsafe and unfit for use and occupation, and untenantable, with walls sunken, cracked, and out of plumb, and in danger of falling into ruin, whereby the defendant was greatly injured and suffered great loss, by having to reconstruct the said walls in part, and repair the dilapidated condition of the building, and fit it for use and occupation at her own costs and charges, then the defendant may recoup or deduct said losses, costs, and charges, against the plaintiff's claim for the said instalment of five thousand dollars, claimed in this suit, or the value of the work done by said plaintiff in and about said stores and warehouse, but the plaintiff is entitled to recover nominal damages at all events; which instructions the court refused to grant without the following qualification, that is to say:

*Qualification.* But, if the jury shall find, from the evidence, that the said Jones hath executed the said work according to the specifications forming a part of the said contract, and in a skilful, diligent, and careful and workmanlike manner, or that his execution thereof was with the knowledge and approbation of the defendant, then they are to find for the plaintiff the said sum of $5,000, with interest from the date of the delivery of the said stores and warehouse.

To the granting of which instructions the plaintiff excepts, and prays the court to sign and seal this his bill of exceptions, which is accordingly done, this eleventh day of November, 1857.    JAMES S. MORSELL.    [SEAL.]
WILLIAM M. MERRICK. [SEAL.]

To the refusal of which instructions, as prayed by the defendant, to the granting of the qualification annexed thereto, the defendant, by her counsel, excepts, and claims the same benefit of exception as if the refusal of the court to grant each of said instructions as prayed, and the granting of the same with the qualification thereto attached, were each separately excepted to; and thereupon this, her bill of exceptions, is signed, sealed, and enrolled, this eleventh day of November, 1857.
JAMES S. MORSELL.    [SEAL.]
WILLIAM M. MERRICK. [SEAL.]

---

---

The case was argued by *Mr. Brent* and *Mr. Poe* for the plaintiff in error, and by *Mr. Bradley* and *Mr. Carlisle*, upon a brief by the latter gentleman and *Mr. Badger*, for the defendant.

The arguments of the counsel were so interwoven with the dates and facts of the case, that it is thought best to omit them entirely.

Mr. Justice WAYNE delivered the opinion of the court.

This record shows that the plaintiff and the defendant entered into a building contract, under seal, with specifications annexed, on the 22d April, 1851. It was agreed between them, that Jones, the plaintiff, should do in a good, substantial, and workmanlike manner, the houses, buildings, and work of every sort and kind described in a schedule annexed to the contract, of which it was a part; that he should procure and supply all the materials, implements, and fixtures, requisite for executing the work in all its parts and details; and that the stores fronting on Market Space, and the warehouse on Seventh street, should be finished and ready for use and occupation, and be delivered over to the defendant, on the first day of October after the date of the contract, and all the rest of the work on the first day of December afterward. The defendant agreed, upon her part, to pay the plaintiff for the performance of the work, and for the materials furnished, twenty-four thousand dollars by instalments: five thousand dollars on the first day of July, 1851; five thousand dollars on the first day of October following; it being expressed in their contract, *that the stores and warehouse were then to be delivered to the defendant ready for use and occupation;* and that the residue of the twenty-four thousand dollars was to be paid to the plaintiff on the first day of January, 1860, with interest upon four thousand of it from the first day of May, 1851, and with interest on ten thousand dollars from the first day of December, 1851. We do not deem it necessary to notice the other covenants of the contract, as they have no bearing upon the case as we shall treat it.

*Dermott v. Jones.*

The suit as originally brought is an action of debt for the recovery from the defendant of the second instalment of five thousand dollars, and for the value of certain extra work done and materials furnished by the plaintiff for the defendant's use. The original declaration contains four counts: first, charges the defendant in the sum of five thousand dollars for work and labor done, and materials furnished and used by her in the erection and finishing certain stores and buildings in the city of Washington; second, for a like sum paid by the plaintiff for the defendant; third, for a like sum had and received; and fourth, for a like sum paid, laid out, and expended by the plaintiff for defendant at her request. The defendant pleaded to the declaration four pleas: first, that she was not indebted as alleged; second, a special plea setting out in detail a contract under seal, with the plaintiff, for the erection of such buildings as are mentioned in it, and for the completion of them—protesting that the plaintiff had not complied with the terms of the same, and declaring that the sum of five thousand dollars claimed by the plaintiff was the second instalment, which, by the contract, was to be due and payable to the plaintiff on the first day of October, 1851, and denying that the buildings were done by that day, or that any claim for the five thousand dollars had accrued before the bringing of the suit, by reason of any contract or agreement different from the special contract, or for any consideration other than the five thousand dollars claimed in the declaration. In the third plea, the identity of the sum sued for with the second instalment is reaffirmed, payable on the 1st of October, 1851, upon condition that the buildings and stores should be completed and ready for use by that day—averring performance on her part of the conditions and covenants of the contract, and non-performance on the part of the plaintiff, especially his failure to complete and have ready for use the warehouse and stores by the time specified. The fourth plea refers to the special contract, avers performance on her part, non-performance on the part of the plaintiff, and especially, that he had not finished and completed the buildings and stores by the day specified in the contract, or at any time, either before or

after that day.   At this point of the pleading the plaintiff applied to be permitted to amend his declaration, and added to it four counts.   The first sets out in detail the special contract referred to in the defendant's second, third, and fourth pleas; avers performance generally, on his part, and non-performance on the part of the defendant.   The second count is the same as the first, down to the averment of performance by plaintiff inclusive, and then it avers that the defendant departed from the stipulations of the contract, and required the plaintiff to do additional work, and to furnish additional materials, whereby the defendant delayed the plaintiff, and prevented him from completing the buildings by the time agreed, which the plaintiff would otherwise have done.   It is then averred that; notwithstanding the additional labor, the plaintiff had completed the work in a reasonable time after the first day of October, 1851, to wit: on the 4th December following, and that the defendant then accepted the same, whereby the second instalment of $5,000 became payable.   The third count is substantially a repetition of the original declaration, and the fourth claims $10,000 for work and labor done, and for a like sum laid out by the plaintiff for the defendant, from all of which his right of action had accrued before it was instituted.

The defendant filed three pleas to the first count of the amended declaration: 1st, that she was not indebted as was alleged; 2d, that the plaintiff had not performed the special agreement; and 3d, that he had not performed the condition precedent of the contract, to complete the building, which he had agreed to do by the first day of October, 1851.   To the rest of the count the defendant demurred.   As the verdict of the jury and the judgment rendered for the plaintiff are upon the first amended count, contrary to instructions asked of the court by the defendant, we shall not notice the subsequent pleadings and proceedings in the case, and will confine ourselves to what we consider to have been the legal rights of the parties under the original declaration and the first amended count.   The evidence shows that the three stores and the warehouse were not finished by the 1st of October, 1851.   It is also proved that

the special contract had been departed from in the course of its execution; that the defendant insisted that alterations and additions should be made in the buildings after they were begun, contrary to the specifications of the special contract, and that the plaintiff had yielded to her requirements. It may have delayed the completion of the stores and warehouse, as it increased the work to be done; but it having been assented to by the plaintiff without any stipulation that the time for performance of the whole was to be delayed, it must be presumed to have been undertaken by the plaintiff to be done, as to time, according to the original contract. The sinking of the wall probably caused the delay, but that cannot give to the plaintiff any exemption from his obligation to finish the stores and warehouse on the 1st of October, without further proof as to the cause it; nor could it in any event entitle him to an instruction from the court that he might recover under a count or a special contract, in which he avers that the work had been completed by him on the 1st of October in conformity with it. The defendant in the court below, plaintiff in error here, to maintain the issues on her part, and to reduce the damages claimed by the plaintiff, introduced witnesses to show that the work, though it had been done, had not been so in a skilful and workmanlike manner, and that the materials used for it were of an inferior kind, especially in the construction of the store wall, and that it was so deficient in other particulars that she had been put to a large expense to make the buildings fit for use and occupation, which amounted to ten thousand dollars. The plaintiff gave rebutting testimony, and then the defendant prayed the court to instruct the jury, "that if the three stores and warehouse were not finished fit for use and occupation, and delivered to her on the 1st of October, 1851, but were at the time when they were delivered wholly unfit and unsafe for occupation, with the walls of some of them sunken out of plumb, and cracked, and in danger of falling, so as to be utterly untenantable, then the plaintiff was not entitled to demand and recover in this order the said sum of $5,000, as the stipulated instalment which the special contract purports to make payable on the 1st October, 1851, *but*

*that the plaintiff was entitled to recover only the value of his work, after deducting the cost and expense incurred by the defendant in repairing the stores and warehouse, to render them fit for occupation,* but that the plaintiff, as claimant, was entitled only to nominal damages.

Also, if the defendant did not, at any time whatever, execute and finish, ready for use and occupation, and deliver in that state and condition to the defendant, the stores and warehouse, but had delivered them over to the defendant in a state wholly unsafe and unfit for use, and untenantable, &c., &c., and *that the defendant had been obliged to reconstruct the walls, and to refix the buildings, so as to fit them for use and occupation, at her own cost and charges, then that the defendant may recoup or deduct the same against the plaintiff's claim for the said instalment of five thousand dollars claimed in the suit, or the value of the work done by the plaintiff upon the stores and warehouse;* but that, in all events, the plaintiff could only recover nominal damages.

These instructions the court refused to give, without the following qualifications :

" If the jury shall find from the evidence that the plaintiff, Jones, has executed the work according to the specifications forming a part of the contract, in a skilful, diligent, and careful and workmanlike manner, and that his performance of it was with the knowledge and approbation of the defendant, then they should find for the plaintiff the said sum of five thousand dollars, with interest from the date of the delivery of the stores and warehouse to the defendant."

The defendant excepted to the refusal of the instructions as they had been prayed for, and to the qualifications of them as they were given to the jury.

There is error in this instruction. The count and the plea of the defendant, and the instruction asked, raised the construction of the special contract, whether or not the right of the plaintiff to recover the second instalment did not depend upon the completion of the stores and warehouse by the 1st of October, 1851; whether that was not a condition precedent, or a case in which the parties had agreed—one to deliver the buildings finished, according to the special

*Dermott* v. *Jones.*

contract, and the other to pay the second instalment concurrently, if they were then so delivered. A failure by the plaintiff to finish and deliver on that day is fatal to a recovery upon the special contract. The plaintiff in the first amended count declares upon it as such, avers his performance accordingly, and the proof is that he had not so performed. We infer, from the whole contract, that it was the intention of the parties that the performance of the work was to be a condition precedent to the payment of the second instalment. There is no word in the contract to make that doubtful.

The plaintiff undertook to furnish the materials and to construct the buildings, according to specifications. Part of them were to be finished, and to be delivered to the defendant, on the 1st of October, 1851, and the residue on the 1st December afterwards. For the whole, the defendant was to pay $24,000—$5,000 on the 1st of July, 1851; $5,000 on the 1st of October, 1851, if the stores and warehouse were then finished for use and occupation, and delivered over on that day to the defendant; and if that was done, then the balance of the $24,000 was to be paid on the 1st of January, 1860, with the interest, as mentioned in the special contract.

The words of the contract for payment are, "in consideration of the covenants, and their due performance." Such words import a condition. It is difficult at all times to distinguish whether contracts are dependent or independent; but there are rules collected from judicial decisions, by which it may be determined. We have tested the correctness of them by an examination of several authorities.

"When the agreements go to the whole of the consideration on both sides, the promises are dependent, and one of them is a condition precedent to the other." Such is the case with the special contract with which we are now dealing. "If the agreements *go to a part only of the consideration on both sides*, the promises are so far independent. If money is to be paid on a day certain, in consideration of a thing to be performed at an earlier day, the performance of that thing is a condition precedent to the payment; and if money is to be paid by instalments, some before a thing shall be done and some when it is

done, the doing of the thing is not a condition precedent to the former payments, *but is so to the latter.* And if there be a day for the payment of money, and that comes before the day for the doing of the thing, or before the time when the thing from its nature can be performed, then the payment is obligatory, and an action may be brought for it, independently of the act to be done. Concurrent promises are those where the acts to be performed are simultaneous; and either party may sue the other for a breach of the contract, on showing, either that he was able, ready, and willing to do his act at a proper time and in a proper way, or that he was prevented by the act or default of the other contracting party." 2 Parsons on Contracts, ch. 3, 189.

The first instalment was to be paid on an appointed day, in consideration of the work to be begun; and the second instalment was to be paid on a subsequent day, if the work should then be finished and delivered over to the defendant, ready and fit for use and occupation. Before that day it could not have been demanded; on that day, the work having been performed, it might have been. The evidence shows that the work had not been done on the 1st of October, 1851, and was not finished until the 1st of December.

The plaintiff avers in his first amended count that he had, on his part, complied with his undertaking in the special contract. The issue upon it is, that he had not done so, and he gave no proof to sustain the averment.

The evidence entitled the defendant to a verdict on that count; but the court, without regard to the time fixed upon for the work to be finished, instructed the jury, that if the work had been done according to the specifications forming a part of the contract, in a skilful and workmanlike manner, or if his execution of it was with the knowledge and approbation of the defendant, then they were to find for the plaintiff the sum of five thousand dollars, with interest from the date of the delivery of the stores and warehouse. It must be obvious that this instruction makes between the parties a different contract from that into which they had entered, and one different from that the plaintiff had declared upon.

*Dermott v. Jones.*

The plaintiff gave no evidence to support the count; but there was evidence showing the reverse of performance on his part. For this error in the court's instruction to the jury upon the first amended count, we shall remand the case for another trial upon the plaintiff's original declaration in debt with the common counts, as in indebitatus assumpsit.

We do not consider that the plaintiff's right to recover upon that declaration was in any way affected by the extra work which was done upon the requisition of the defendant, or by the increase of materials which he furnished for that purpose; or that the sinking of the foundation of the buildings excused him from finishing the work by the time specified; or that the acceptance of the buildings by the defendant as they had been constructed by the plaintiff was any release of the plaintiff from his undertaking to finish them in the time specified in the contract. But after that time had passed, the plaintiff continued, with the knowledge and permission of the defendant, and also with the knowledge of her superintending architect, to do the work specified in the contract, and also to do the extra work, and to furnish the materials necessary for both. And when the work was done by the plaintiff, however imperfectly that may have been, the defendant accepted it.

The law in such a case implies, that the work done and the materials furnished were to be paid for. The general rule of law is, that while a special contract remains open—that is, unperformed—the party whose part of it has not been done cannot sue in indebitatus assumpsit to recover a compensation for what he has done, until the whole shall be completed. This principle is affirmed and acted upon in Cutter *v.* Powell, 6 Term Reports, 320; also in Hulle *v.* Heightman, 2 East., 245, and in several other cases.

But the exceptions from that rule are in cases in which something has been done under a special contract, but not in strict accordance with that contract. In such a case, the party cannot recover the remuneration stipulated for in the contract, because he has not done that which was to be the consideration of it. Still, if the other party has derived any benefit from the labor done, it would be unjust to allow him to retain

that without paying anything. The law, therefore, implies a promise on his part to pay such a remuneration as the benefit conferred is really worth; and to recover it, an action of indebitatus assumpsit is maintainable.

Such is the law now in England and in the United States, notwithstanding many cases are to be found in the reports of both countries at variance with it. It was recognised by this court to be the existing rule in the case of Slater *v.* Emerson, 19 Howard, 224, 239.

The difference between the rule now and in earlier times, it is believed, has caused much of the difficulty in the establishment of the present rule. Formerly it was held, that whenever anything was done under a special contract not in conformity with it, the party for whom it was done was obliged to pay the stipulated price; but that he might resort to a cross-action, to indemnify himself for the deficiency in the consideration. Blair *v.* Davis, 1794, cited in 7 East., 470. See Smith's L. Cases, in the notes following the case of Cutter and Powell, 2d vol., for a full description, historical and chronological, of the rule as it now prevails and as it formerly was.

The rule as it now exists has been recently discussed and affirmed in the Queen's Bench, in the case of Munroe *v.* Phelps and Bell, 8 Ellis and Blackburn, 739; 92 English Common Law.

It has been the rule in the courts of New York for more than thirty years. In the case of Jewell et al. *v.* Schroepnell, 4 Cowan, 564, it was decided, that if there be a special contract under seal to do work, and it be not done pursuant to the agreement, whether in point of time or in other respects, the party who did the work may recover, upon the common counts in assumpsit, for work and labor done. If, when the time arrives for performance, the party goes on to complete the work, with the knowledge of his employer, it was evidence of a promise to pay for the work. So if the employer does not object.

This rule prevails, also, in Massachusetts, in Pennsylvania, and in several of the other States. Also in Alabama, as may

be seen in the case of McVoy *v*. Wheeler, 6 Porter, 201. It is discussed, with a very accurate discrimination of its application, in the 2d vol. of Professor Parsons upon Contracts.

In the trial of such an action, where the defence is not presented as a matter of set-off, arising on an independent contract, but for the purpose of reducing the plaintiff's damages, because he had not complied with his cross obligations arising on the same contract, the defendant may be allowed a recoupment from the damages claimed by the plaintiff for such loss as she shall have sustained from the negligence of the plaintiff. Such evidence is allowed to prevent circuity of action, and to prevent further litigation upon the same matter. It may be well to say, that the court allowed a recoupment in Green and Biddle, 8 Wheat., 1, to a disseizor, who was a bona fide occupant of land, for the improvement made by him upon it, against the plaintiff's damages. But such recoupment cannot be claimed unless the defendant shall file a definite statement of his claims, with notice of it to the plaintiff, sufficiently in time before the trial term of the case to enable the latter to meet the matter with proof on his side.

We have pursued the case in hand further than may have been necessary; but it was thought best to do so, as the points now here ruled have not before been expressly under the consideration of this court.

The judgment given in the court below is reversed; and we shall order that the case shall be remanded to it, with directions for its trial again, pursuant to our rulings in this opinion.